UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TODD M. MULCAHY,

       Plaintiff,

      -v-                            5:19-CV-1410

BRISTOL-MYERS SQUIBB COMPANY
and JOHNSON CONTROLS, INC.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

OFFICE OF ROBERT L. LAPLANTE      ROBERT L. LAPLANTE, ESQ.
Attorneys for Plaintiff
Century Plaza, Suite 300
201 E. Jefferson Street
Syracuse, NY 13202

MORGAN, LEWIS & BOCKIUS LLP       RUDOLPH J. BURSHNIC, III, ESQ.
Attorneys for Defendant Bristol-Myers  THOMAS A. LINTHORST, ESQ.
    Squibb Company
502 Carnegie Center
Princeton, NJ 08540

OGLETREE, DEAKINS LAW FIRM        JENNIFER A. RYGIEL-BOYD, ESQ.
Attorneys for Defendant Johnson
    Controls, Inc.
10 Madison Avenue, Suite 400
Morristown, NJ 07960

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

On August 6, 2019, plaintiff Todd Mulcahy ("Mulcahy" or "plaintiff") filed this action in Supreme Court, Oswego County, against defendant Bristol-Myers Squibb Company ("BMS") alleging that BMS had denied him compensation and other employment benefits by mis-classifying him as an independent contractor in violation of state law.

On November 14, 2019, BMS removed the case to federal court. According to the notice of removal, the exercise of federal–question jurisdiction was appropriate because a number of Mulcahy's state law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), a broad federal law that governs employee benefits.

On December 15, 2019, Mulcahy amended his pleading to add additional claims and to name Johnson Controls, Inc. ("JCI") as a second defendant. Thereafter, BMS and JCI moved separately under Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking partial dismissal of plaintiff's thirty-eight count amended complaint. Both motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[1]

Mulcahy, a New York citizen living in Oswego, received a degree in Individual Technical Studies from Canton Agricultural and Technical School in the early 1980s. *See* Am. Compl. ¶¶ 1, 10. From 1982 to 1993, plaintiff worked as a "drafter" for companies like Black Clawson, Welch Allyn, and General Electric. *Id.* ¶ 10.

In 1993, a temporary employment agency sent Mulcahy to interview for a

---

[1] These factual allegations are taken from Mulcahy's operative pleading, Dkt. No. 8, and are assumed true for the purpose of assessing the motions to dismiss.

computer-aided drafting ("CAD") job at BMS, a New York corporation with an office and manufacturing facility in Syracuse, New York.  Am. Compl. ¶¶ 2, 12.  After an interview with Bill Favior, the Plant Engineering Department Manager, plaintiff began working at BMS as a "contract employee" through the temp agency.  *Id*. ¶¶ 12, 15.  In that role, plaintiff reported directly to Mike Somer[2] ("Somer"), a Senior Process Engineer, who reviewed his time sheets and supervised his work.  *Id*. ¶¶ 13-15.  According to plaintiff, he would call the temp agency once a week to report his hours.  *Id*. ¶ 16.

In 1995, Mulcahy asked Somer if he could work directly for BMS rather than continue on with the temp agency.  Am. Compl. ¶ 19.  According to plaintiff, Somer explained that BMS could not hire him directly, but that they could bring him on as an "independent contractor" and cut out the middle-man; *i.e.*, the temp agency.  *Id*.  Plaintiff alleges that Somer told him he would need to form his own company "as a way for BMS to pay [p]laintiff."  *Id*.  Thereafter, plaintiff filed papers "for a DBA," which he called "Flextex."  *Id*.

However, Mulcahy's work arrangement at BMS remained unchanged.  Plaintiff continued to work out of BMS's engineering department at its location in Syracuse, New York.  Am. Compl. ¶ 20.  Plaintiff continued to report to Somer as his direct supervisor and attend "mandatory" company meetings.  *Id*. ¶¶ 20, 28. And plaintiff was still required to use BMS-supplied equipment, including a computer, software, materials, and other supplies.  *Id*. ¶¶ 17, 24.

According to Mulcahy, BMS treated him almost as it would any other department head.  Am. Compl. ¶ 23.  Plaintiff alleges he was required to obtain permission to work

---

[2] Mulcahy's complaint varies in the way it spells the surnames of Somer and others.  The Court has chosen to keep these spellings consistent through this opinion, possibly at the expense of accuracy.

- 3 -

overtime and to take vacation or sick time. *Id*. ¶ 28. In fact, at various times plaintiff hired on additional staff to support his work in the "CAD unit" at the direction of, and with approval from, Somer. *Id*. ¶¶ 39-45.

In 1999, Ted Cooper, the Director of Plaint Engineering, told Mulcahy "it would be a good idea" for him to incorporate. Am. Compl. ¶ 35. Somer gave plaintiff the same advice. *Id*. ¶ 36. At Somer's direction, plaintiff met with Tom Parker, the Director of Procurement and Purchasing, to get the "details of what he needed to do to incorporate and act like a business." *Id*. ¶ 37. Based on this meeting, plaintiff incorporated under the name "Flextex Consulting." *Id*. ¶ 48. According to plaintiff, the sole purpose of this entity "was to serve as a conduit for invoices" that plaintiff would submit to BMS for payment. *Id*.

Later that year, Somer instructed Mulcahy to submit his invoices once a month rather than once a week. Am. Compl. ¶ 49. Because this meant that payments would lag for fourteen to thirty days, plaintiff obtained a line of credit from a local bank to cover his wages and the wages of others he brought on to help him complete the work assigned by BMS. *Id*.

In 2005, BMS conducted a department analysis to determine which of its vendors qualified as "independent contractors." Am. Compl. ¶ 53. According to Mulcahy, he completed a questionnaire and, based on his answers, it "should have been clear to whoever at BMS reviewed" it that plaintiff was not an independent contractor. *Id*.

In 2008, BMS hired a law firm in Syracuse to develop an employment agreement with Mulcahy. Am. Compl. ¶ 54. Although plaintiff and one of the firm's lawyers negotiated for several months, they were unable to reach an agreement. *Id*. According to plaintiff, language in the proposed contract demonstrated that BMS knew plaintiff was not operating as an independent contractor. *Id*.

In 2009, BMS hired an advising firm called "Zero Chaos" to determine whether its independent contractors were operating in accordance with state law. Am. Compl. ¶ 55. As part of this audit, a representative interviewed Mulcahy, asked him to fill out a questionnaire, and requested access to certain documents. *Id*. ¶¶ 55-56. Shortly thereafter, BMS made the CAD unit run (*i.e.*, plaintiff and the employees that he hired) "a separate cost center." *Id*. ¶ 57. According to plaintiff, this meant that the CAD unit became an "official part" of the BMS facility "for accounting purposes." *Id*.

In 2010, BMS retained JCI, a Wisconsin corporation registered to do business in New York, to act as the "intermediary" between Mulcahy and BMS, and the two together became "joint" employers of plaintiff. Am. Compl. ¶¶ 2, 60A-C. Under JCI's direction, a man named Jason Barcelo ("Barcelo") took over on-site supervision of plaintiff and his CAD unit. *Id*. ¶ 60C-E. Going forward, plaintiff and the other workers were required to submit time sheets and other documentation to Barcelo. *Id*. ¶¶ 60G-H. Barcelo also required plaintiff and others to attend mandatory meetings. *Id*. ¶¶ 60H, 60L.

In 2015, BMS replaced JCI with a different intermediary entity known as Jason Lang Lasalle Americas, Inc. ("JLL"). Am. Compl. ¶ 60N. Barcelo became an employee of JLL and continued to supervise Mulcahy and the BMS CAD workers. *Id*. ¶ 60O. As part of this transition, JLL instructed plaintiff to fill out certain forms so that "a decision could be made as to whether [p]laintiff was an independent contractor or an employee." *Id*. ¶ 60P. According to plaintiff, "[i]t was obvious to anyone who reviewed the papers" that he was "an employee of BMS, not an independent contractor." *Id*.

In 2016, 2017, and 2018, Mulcahy repeatedly complained about BMS's slow or late payment of wages owed to him and to other CAD workers. Am. Compl. ¶¶ 65-69. In

- 5 -

February of 2018, plaintiff received an e-mail from a Zero Chaos representative that stated plaintiff was not an independent contractor to BMS but that his arrangement was more of a "staff augmentation situation."  *Id*. ¶ 73.  According to plaintiff, he was terminated as a result of this opinion from Zero Chaos.  *Id*.

Mulcahy also alleges that he suffers from Chronic Inflammatory Demyelinating Polyneuropathy ("CIPD"), a disabling condition characterized by "progressive weakness and impaired sensory function in the legs and arms."  Am. Compl. ¶ 74.  According to plaintiff, BMS terminated him after learning that he could no longer be considered an independent contractor because it wanted to avoid accommodating this disability.  *Id*. ¶ 77.

### III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  *United States v. Bedi*, 318 F. Supp. 3d 561, 564-65 (N.D.N.Y. 2018) (citation omitted).  "In making this determination, a court generally confines itself to the facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."  *Forjone*, 414 F. Supp. 3d at 298 (citation and internal quotation marks omitted).

## IV. **DISCUSSION**

Even though he has already amended his pleading once, Mulcahy's operative complaint is a jumbled mess. It presents a disordered chronology of events. *Compare, e.g.*, Am. Compl. ¶¶ 35-36 (discussing events in 1999), *with, e.g.*, *id*. ¶¶ 39 (discussing events in 1996). It repeats facts at several points. *See, e.g.*, *id*. ¶¶ 60I, 60L. It nests multiple sub-paragraphs of factual allegations inside single numbered paragraphs. *See, e.g.*, *id*. ¶ 39 (including a primary allegation as well as sub-allegations 39A through 39F). For some inexplicable reason, it recycles the number sixty as a stand-in for what should otherwise be seventeen (or perhaps more) distinct factual allegations. *See, e.g.*, *id*. ¶¶ 60-60Q. And although it asserts thirty-eight ostensibly distinct causes of action, even plaintiff concedes that a good number of these claims are duplicative. Pl.'s Opp'n to BMS, Dkt. No. 19, 12-13; Pl.'s Opp'n to JCI, Dkt. No. 23, 2.[3]

BMS has moved to dismiss five sets of claims using three distinct legal arguments. BMS Mem., Dkt. No. 13-1, 6-8. First, BMS seeks to dismiss claims for which there is no express or implied right of action under state or federal law. *Id*. at 6. Second, BMS seeks to dismiss claims that are preempted by ERISA. *Id*. And third, BMS seeks to dismiss certain claims are duplicative. *Id*. Roughly the same is true of JCI, which has moved to dismiss a subset of plaintiff's claims as duplicative. JCI Mem., Dkt. No. 20-1 at 4.

### A. **ERISA**

Because ERISA provided the basis for removal, the question of preemption will be addressed first. According to BMS, the twelfth, fourteenth through nineteen, and the

---

[3] Pagination corresponds to CM/ECF.

thirty-second causes of action (the "benefits claims") are all preempted by ERISA because each claim alleges the deprivation of "employee benefits" that are governed by an "employee benefit plan" within the broad meaning of the statute. BMS Mem. at 7, 14.

Mulcahy responds by claiming that this case has nothing to do with the denial of benefits by an ERISA plan or a plan administrator. Pl.'s Opp'n to BMS, Dkt. No. 19, 4. In plaintiff's view, the issue to be determined in this litigation is "the legal relationship between [him] and [BMS]." *Id*. at 6. According to plaintiff, this question has nothing to do with ERISA. *Id*. at 7.

BMS replies that ERISA preemption does not depend on the named defendant but on the question of whether the state-law claim at issue "would require reference" to an ERISA plan. BMS Reply, Dkt. No. 22, 9. According to BMS, Mulcahy's claim to benefits necessarily requires reference to the BMS retirement and benefits plans. *Id*. at 9-10.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 237 (2d Cir. 2012) (citation omitted). As relevant here, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[4]

"A claim under state law relates to an employee benefit plan if that law 'has a connection with or reference to such a plan.'" *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014) (quoting *Franklin H. Williams Ins.*

---

[4] Because ERISA has two preemption provisions, ERISA preemption can mean two different things. Section 502, also known as "complete preemption," is a jurisdictional provision that "lets a state court defendant remove an action that seeks to enforce an ERISA plan to federal court and then convert the plaintiff's state law claim to one to enforce the ERISA plan under federal law." *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 6 (D. Conn. 2019); *see also* 29 U.S.C. § 1132(a)(1)(B). Section 514, also known as "express preemption," lets a party assert it defensively to defeat state law claims that "relate" to an ERISA plan. 29 U.S.C. § 1144(a).

*Trust v. Travelers Ins. Co.*, 50 F.3d 144, 148 (2d Cir. 1995)). "A state law also may 'relate to' a benefit plan, 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Id*. (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). "Thus, ERISA 'preempts all state laws that *relate* to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA.'" *Id*. (quoting *Howard v. Gleason Corp.*, 901 F.2d 1154, 1156 (2d Cir. 1990)).

Upon review, BMS's motion to dismiss these benefits claims must be granted.[5] In Mulcahy's view, these claims are not preempted because he has asserted them directly against BMS rather than naming the benefits plans or the administrators of those plans. Pl.'s Opp'n to BMS at 4. However, as BMS carefully explains, all of these claims involve alleged deprivations of "employee" benefits in the form of things like "health insurance," "pharmacy benefits," "401(k) contributions," "profit sharing." BMS Mem. at 14-17; BMS Reply, Dkt. No. 22, 8-12.

Because all of these benefits would fall under the terms of BMS's employee welfare benefit plan, its employee pension benefit plan, and / or its employee severance benefits plan, these claims "relate to" those plans and are therefore expressly preempted. *See, e.g.*, *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (affirming dismissal on preemption grounds of state law claims sounding in contract, quasi-contract, and tort where plaintiff sought benefits under the terms of plan that had been terminated); *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016) (dismissing various state law claims as preempted under ERISA). Accordingly, the twelfth, fourteenth through

---

[5] Although this is a motion to dismiss, the plan documents submitted by BMS may be considered because they are "integral" to the benefits claims. *Star Multi Care Servs., Inc.*, 6 F. Supp. 3d at 283 n.2.

nineteen, and the thirty-second causes of action will be dismissed.

### B. Federal Tax Claims

BMS also moves to dismiss the twenty-first cause of action, which alleges that BMS "violated Plaintiff's rights by requiring Plaintiff to make statutory contributions and withholdings for BMS CAD Unit employees for Social Security match, [M]edicare [m]atch, and [the Federal Unemployment Insurance Act]." BMS Mem. at 13 (quoting Am. Compl. ¶ 141). In BMS's view, this allegation amounts to a claim under the Federal Insurance Contributions Act ("FICA") and / or the Federal Unemployment Insurance Act ("FUTA"). *Id*. According to BMS, neither statute provides for a private cause of action. *Id*.

Mulcahy responds by recasting this claim as one for unjust enrichment rather than one arising under federal law. Pl.'s Opp'n to BMS at 11. According to plaintiff, BMS should reimburse him for expenses "made on their behalf through their fraudulent misrepresentation to him that he was an independent contractor and the other CAD unit workers [were] his employees." *Id*. at 11-12.

Upon review, this claim must also be dismissed. FICA and FUTA "impose excise taxes on employee wages to fund Social Security, Medicare, and unemployment compensation programs." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 204 (2001). Importantly, however, these tax statutes "are revenue-producing in nature and do not create a special benefit to [ ] individual plaintiffs." *White v. White Rose Food*, 62 F. Supp. 2d 878, 887 (E.D.N.Y. 1999). In other words, there is no private cause of action under FICA or FUTA. *Id*.

### C. Remaining Matters[6]

The remaining claims against BMS and JCI are duplicative of dismissed claims and /or arise under New York law. Where, as here, no federal claims[7] survive a motion to dismiss, the appropriate course of action is to decline to exercise supplemental jurisdiction over the remaining causes of action. 28 U.S.C. § 1367(c)(3).

Accordingly, all of the remaining claims will be dismissed without prejudice. *See, e.g.*, *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("Where the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court.").

## V. CONCLUSION

Therefore, it is

ORDERED that

1. BMS's motion to dismiss is GRANTED as to the federal claims;

2. Mulcahy's benefits claims are DISMISSED with prejudice;

3. The remaining state law claims against BMS are DISMISSED without prejudice;

4. The state law claims against JCI are DISMISSED without prejudice; and

5. Mulcahy's amended complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motions and to close the file.

---

[6] To the extent one or more of Mulcahy's state law claims might be recast as federal ERISA claims under the doctrine of "complete preemption," dismissal would still be appropriate. *See, e.g.*, *Star Multi Care Servs., Inc.*, 6 F. Supp. 3d at 292 (finding same where plaintiff named improper defendant and failed to allege proper exhaustion).

[7] The parties are not completely diverse, since Mulcahy is a New York domiciliary and BMS is a domestic corporation headquartered in New York.

IT IS SO ORDERED.

Dated: July 29, 2020
      Utica, New York.

_____
United States District Judge